IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| FARRIS GENNER MORRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 07-1084-JDB-egb |
| | ) | |
| BRUCE WESTBROOKS, Warden, | ) | |
| Riverbend Maximum Security | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ORDER DENYING APPLICATION FOR A CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

On April 5, 2017, Petitioner, Farris Genner Morris, through counsel, filed an application

for a certificate of appealability ("COA"). (Electronic Case Filing ("ECF") No. 87.) Respondent

has not filed a response, and the time period for doing so has expired.

Morris asserts that he is entitled to a COA on claims that are debatable among reasonable

jurists and that deserve encouragement to proceed further based on:

a) The grants of certiorari in *Davila v. Davis*, [137 S. Ct. 810 (2017)], and *Wilson v. Sellers*,
   137 S. Ct. 1203 (2017);

b) The Supreme Court's decision in *Buck v. Davis*, 137 S. Ct. 759 (2017), which Morris
   contends condemns racism in capital cases; and

c) The fact that his claims have never received the application of *Martinez v. Ryan*, 566 U.S.
   1 (2012).

(ECF No. 87 at PageID 6587.) Petitioner insists that a COA should be granted on all his claims,

but the Court "should certainly grant" a COA on claims in paragraphs 9(K) of the amended

petition incorporating 21(B-D); 9(L); 9(M); 9(N) incorporating 24; 9(P) incorporating 27; 10(A-D); 11(B); 11(D) incorporating 26(B); 11(F) incorporating 18; 11(G); 11(H) incorporating 9(L), 9(M), 19, 21(A-D), 26(A), and 29(L); 24; 27; and 29(L).  (*Id.*)

## I.     THE COA STANDARD

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005) (per curiam).  The Court must issue or deny a COA when it enters a final order adverse to a § 2254 petitioner.  Rule 11, Rules Governing § 2254 Cases in the United States District Courts.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted); *see Buck*, 137 S. Ct. at 773 (a COA "is not coextensive with a merits analysis [and] should be decided without 'full consideration of the factual or legal bases adduced in support of the claims'"); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed, *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011); however, courts should not issue a COA as a matter of course, *Bradley*, 156 F. App'x at 773.

## II.    RELEVANT PROCEDURAL HISTORY

On April 26, 2007, Morris filed a *pro se* petition pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Through counsel, he amended the petition on January 11, 2008.  (ECF No. 12.)  On September 29, 2011, the Court determined that Petitioner was denied the effective assistance of counsel at sentencing and granted the petition in part.  (ECF No. 58 at PageID 1124.)  The Court denied a COA because "[t]here can be no question that the remaining claims that were dismissed are either without merit or barred by procedural default."  (*Id.* at PageID 1125-26.)

The parties appealed.  (ECF Nos. 62 & 63.)  On March 1, 2012, Morris filed an application for a COA on his guilt-phase habeas claims, particularly the guilt-phase ineffective assistance of counsel claims.  (Case No. 11-6322, Doc. No. 30 (6th Cir. Mar. 1, 2012).)[1]  He stated that his habeas petition was the first opportunity to present the procedurally defaulted ineffective assistance of counsel claims and that the Sixth Circuit "should await the Supreme Court's decision in *Martinez* before determining whether Petitioner's claims are defaulted."  (*Id.* at 26-30.)

*Martinez* was decided on March 20, 2012, while the application for a COA was pending.  On September 13, 2012, the Sixth Circuit granted in part and denied in part Morris's application for a COA (Doc. No. 41-2), stating that

> [t]he case will proceed on the Warden's appeal and on Morris's claim that his trial counsel were ineffective in the guilt phase for failing to investigate and present a state-of-mind defense to the charge of first-degree intentional, deliberate, premeditated murder.  Morris has waived consideration of his other guilt-phase claims by failing to argue them in his COA application.

(*Id.*)

---

[1]In Morris's application for a COA to the Sixth Circuit, he did not specifically address any of the ineffective assistance of trial counsel claims raised in the instant application and failed to raise ineffective assistance of appellate counsel claims.  (*See* Case No. 11-6322, Doc. No. 30 at 8-10.)

On July 24, 2013, the inmate filed a motion to remand the case to the district court based on *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), which had been decided two months earlier on May 28, 2013. (Doc. No. 65-1.) Morris sought remand to determine cause and prejudice for the default of his ineffective assistance of trial counsel claims related to counsel's failure to:

- object to jury instructions regarding reasonable doubt;

- challenge race and gender discrimination in the selection of the grand jury foreperson; and

- raise a *Brady* [*v. Maryland,* 373 U.S. 83 (1963)] claim about the State's pre-trial consultation with its expert witness O. C. Smith.

(*Id.* at 1, 8-10.) Respondent argued that two of the three claims were not raised in the petition; that *Martinez* and *Trevino* were not timely raised as to the other claim; and that Morris's ineffective assistance claims are not substantial. (Doc. No. 71 at 1-2, 19.) On October 30, 2013, the Sixth Circuit denied the motion to remand. (Doc. No. 82-2.)

While Morris's appeal was pending, the Sixth Circuit held "that ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial" under *Martinez* and *Trevino*. *Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014).

On September 23, 2015, the Sixth Circuit affirmed the denial of Morris's guilt-phase ineffectiveness claims, vacated the grant of habeas relief for the sentencing-phase ineffective assistance claims, and remanded the case "for a denial of the writ in accordance with this decision." (Doc. No. 126-2 at 26.)[2] *See Morris v. Carpenter*, 802 F.3d 825, 844 (6th Cir. 2015).

---

[2]The judgment stated that the Sixth Circuit remanded the case "to the district court for the denial of the writ of habeas corpus in accordance with the opinion of this court." (ECF No. 70 at PageID 6394.)

The Sixth Circuit denied *en banc* rehearing.  (Doc. No. 133.)  The United States Supreme Court denied the petition for writ of certiorari on October 4, 2016.  (Doc. No. 136.)

The Sixth Circuit issued a mandate on October 4, 2016.  (ECF No. 74.)  Consistent with that mandate, this Court denied the petition, and a judgment was entered on October 12, 2016.  (ECF No. 75 at PageID 6401; *see* ECF No. 76 at Page ID 6402.)  The Court denied Morris's motion to alter or amend the judgment on March 13, 2017.  (ECF No. 85.)

## III.    ANALYSIS

The Court first addresses the relevant law of the case as it relates to Petitioner's request for a COA and notes that the Sixth Circuit previously considered waived all of his guilt-phase claims except for ineffective assistance of counsel for failing to investigate and present a state-of-mind defense to the first degree murder charge and denied remand based on *Martinez*.  The one guilt-phase claim that the Sixth Circuit considered was denied on the merits.  *Morris*, 802 F.3d at 842.

"[F]indings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."  *Moore v. Mitchell*, 848 F.3d 774, 776 (6th Cir. 2017) (quoting *United States v. Moored*, 38 F. 3d 1419, 1421 (6th Cir. 1994)), *reh'g en banc denied* (May 3, 2017).  "The law of the case doctrine is not an inexorable command but is directed to a court's common sense."  *Id.* (internal quotation marks omitted).  The Sixth Circuit has stated three reasons to reconsider a ruling in lieu of relying on the law of the case:  (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice."  *Id.*

In *Wheeler v. Simpson*, 852 F.3d 509, 513 (6th Cir. 2017), *reh'g denied* (Apr. 12, 2017), the Sixth Circuit stated that its previous decision on the petitioner's guilt-phase claims and the Supreme Court's denial of the certiorari petition was the law of the case and refused to revisit those claims. *See Cadogan v. Renico*, Civil No. 04-CV-71761-DT, 2008 WL 3979496, at *2 (E.D. Mich. Aug. 25, 2008) ("Given that the Sixth Circuit has already dismissed petitioner's prior appeals or has declined to issue a certificate of appealability from this Court's prior decisions, the law of the case doctrine prevents this Court from issuing a certificate of appealability in this case."). Similarly, in the instant case, the Sixth Circuit has ruled on the claims presented and certiorari has been denied. The appellate court's specific denial of a COA amounts to a holding that this Court's decision on the particular issue is not debatable among reasonable jurists. Likewise, the Sixth Circuit's express denial of relief establishes the law of the case. Therefore, the Court will determine whether Morris has articulated an argument that controlling authority presents a subsequent contrary view of the law and that the decision is clearly erroneous and would work a manifest injustice in determining whether the issues presented are debatable among reasonable jurists or deserve encouragement to proceed further.

A.  *Davila*

Morris contends that, based on the grant of certiorari in *Davila*, he is entitled to a COA on the following ineffective assistance claims for appellate counsel's failure to state claims about:

- the State's systematic racial use of peremptory challenges  (Am. Pet. ¶ 11(B));

- the State's improper closing argument in the sentencing phase (Am. Pet. ¶¶ 11(D) & 26(B))[3];

_____

[3]Paragraph 26(B) of the amended petition asserts prosecutorial misconduct for making unconstitutional arguments at the sentencing phase.  (ECF No. 12 at PageID 132.)

- the removal for cause of jurors that were qualified to serve under *Wainwright v. Witt* (Am. Pet. ¶¶ 11(F) & 18);

- the admission of the medical examiner's testimony at the sentencing phase (Am. Pet. ¶11(G));

- trial counsel's failure to strike Juror Atkins (Am. Pet. ¶¶ 11(H) & 9(L));

- trial counsel's failure to strike Juror Bowman (Am. Pet. ¶¶ 11(H) & 9(M));

- trial counsel's failure to remove jurors who admitted prejudices and biases against the defendant that prohibited their impartiality (Am. Pet. ¶¶ 11(H) & 19);

- the jury instructions at the guilt and sentencing phases of trial which were unconstitutional, relieved the prosecution of its burden of proof, and led to the arbitrary infliction of the death sentence through the reasonable doubt jury instruction (Am. Pet. ¶¶ 11(H) & 21(A));

- the jury instructions on intent (Am. Pet. ¶¶ 11(H) & 21(B));

- at the guilt phase, the jury instruction to determine whether Morris was "capable of premeditation" when the proper constitutional inquiry was whether he actually premeditated (Am. Pet. ¶¶ 11(H) & 21(C));

- at the guilt phase, the jury instruction on intoxication (Am. Pet. ¶¶ 11(H) & 21(D)); and

- the prosecution's prejudicial misleading and unconstitutional arguments (Am. Pet. ¶¶ 11(H) & 26(A)).

(ECF No. 87 at PageID 6589; *see* ECF No. 12 at PageID 116-17, 121, 125, 127-29, 131-32.)

Petitioner contends that these ineffective assistance of appellate counsel claims were worthy of a COA because they were debatable on the merits given the grant of certiorari in *Davila*. (ECF No. 87 at PageID 6589.)

The Court dismissed Morris's claims in paragraph 11(A-H) of the amended petition because those claims were procedurally defaulted. (*See* ECF No. 58 at PageID 997, 1061.) The present controlling authority in the Sixth Circuit and current United States Supreme Court precedent does not extend the equitable exception granted under *Martinez* to ineffective assistance of appellate counsel claims. The Court's grant of certiorari in *Davila* could, however,

demonstrate an issue that was adequate to deserve encouragement to proceed further if Morris established that a claim was substantial under *Martinez*.

### 1. Juror Savannah Ingram (Am. Pet. ¶ 11(B))

Morris claims that his appellate counsel's failure to challenge the race-based peremptory exclusion of black Juror Savannah Ingram has some merit and is debatable, where Ingram had relatives with drug problems and white jurors who had relatives with drug or alcohol problems were not struck. (ECF No. 87 at PageID 6592.) On consideration of Morris's motion to alter or amend judgment, the Court considered the ineffective assistance of trial counsel claim based on the failure to object to the peremptory challenge against Ingram under *Batson v. Kentucky*, 476 U.S. 79 (1986) (Am. Pet. ¶ 9(N)), and determined that Morris had not established prejudice and that *Martinez* did not require alteration or amendment of the judgment. (ECF No. 85 at PageID 6577-80.) Where Ingram had pro-prosecution leanings that could have harmed Morris, appellate counsel could not be considered deficient for not stating a claim regarding the strike against the juror. The allegations are not debatable among reasonable jurists and do not deserve encouragement to proceed further. Morris is not entitled to a COA on the allegations in paragraph 11(B) of the amended petition.

### 2. Improper Closing Argument (Am. Pet. ¶¶ 11(D) & 26(B))

Petitioner argues he is entitled to a COA on his claim that his appellate counsel was ineffective for failing to raise constitutional challenges to the prosecution's improper arguments at sentencing. (ECF No. 87 at PageID 6593.) In paragraph 26(B) of the amended petition, Morris alleges that the prosecution's arguments at the sentencing phase were unconstitutional because he:

- stated that the jury "shall impose the death penalty";

- argued for the death penalty based on unconstitutionally vague terms in the heinousness aggravating circumstance;

- made inflammatory arguments that the victims were led to the slaughterhouse;

- told the jury to remember the victims' families;

- told the jury to give the death sentence and thereby "render unto Caesar," injecting improper religious standards into the penalty phase; and

- misled the jury and relieved them of their responsibility for imposing the death sentence by telling them that, in imposing the death sentence, the jurors "didn't do it to him."

(ECF No. 12 at PageID 132-33.)

In the application for a COA, for example, Morris maintains that the prosecution improperly argued that, if jurors voted for death, they would not be responsible for Petitioner's death. (ECF No. 87 at PageID 6593.) He contends that he is entitled to a COA because the improper argument violated the Eighth Amendment under *Caldwell v. Mississippi*, 472 U.S. 320 (1985). (*Id.*) He asserts that, in light of *Caldwell*, the allegations in paragraphs 11(D) and 26(B) of the amended petition are debatable among reasonable jurists and *Davila* may allow him to overcome procedural default. (*Id.*) In *Caldwell*, the Supreme Court held that it violated the Constitution "to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell*, 472 U.S. at 328-29. Morris makes no specific arguments related to other subclaims in paragraph 26(B). However, another relevant inquiry is whether appellate counsel should have raised these claims if the purportedly improper comments or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

With regard to Morris's allegation that the prosecution stated in closing argument that the jury shall impose the death penalty, the prosecutor explained:

> I recognize how serious this is and so do you.  But each and every one of you said that you would do that and if the State of Tennessee made one further statement and promise, as is the law in the State of Tennessee, you stated that if the State of Tennessee proves to my mind beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances, then I will follow the law and the instructions of the Court and impose the death penalty.  And I say to you, ladies and gentlemen of the jury, that beyond any reasonable doubt and to all moral certainty the proof that you've heard in this case, both on evidence in chief where you found the defendant guilty of two separate counts of murder in the first degree and the rape of Angela Ragland, that there are no mitigating circumstances whatsoever that come anywhere close to outweighing the mitigating circumstances, and based upon the proof that we have in this case, the law is clear, you *shall impose the death penalty.*

(ECF No. 66-15 at PageID 2906-07 (emphasis added).)   This argument is based on the prosecution's belief that the aggravating circumstances outweigh the mitigating ones.   The statement "you shall impose the death penalty" is conditioned on the jury's acceptance of the prosecution's argument.

Further, the Court instructed the jury that it was the "sole judge of the facts and of the law as it applies to the facts" and that "the Court [not the prosecutor] is the proper source from which you are to get the law."  (*Id.* at PageID 2930; *see id.* at PageID 2931 ("[t]he law makes you, the jury, the sole and exclusive judges of the credibility of the witnesses and the weight to be given their evidence").)  The statement "you shall impose the death penalty" when read in the context of the prosecution's argument and the jury instructions at sentencing does not create a debate among reasonable jurists about this ineffective assistance of appellate counsel claim.

To the extent Morris claims that his appellate counsel was ineffective for not raising the issues of the constitutionality of the heinous, atrocious, and cruel ("HAC") aggravating circumstance, this Court has held that the HAC aggravating circumstance in this case was

constitutional based on Sixth Circuit and United States Supreme Court precedent and that the related ineffective assistance of trial counsel claim was without merit. (ECF No. 58 at PageID 1048-52.) Morris's request for a COA is based on appellate counsel's failure to raise a claim about the prosecution's argument of the purportedly unconstitutionally vague terms in the HAC aggravating circumstance. That claim is not debatable among reasonable jurists and does not deserve encouragement to proceed further.

Morris claims ineffective assistance of appellate counsel based on the prosecution's argument that the victims were led to the slaughterhouse. The prosecution stated that Erica Hurd "laid there and was tormented and literally led out to the slaughter house." (ECF No. 66-14 at PageID 2914.) Hurd had "37 stab wounds, 23 of which were sustained prior to death and 14 of which were post-mortem." *See Morris*, 802 F.3d at 829. The statement that the victims were led to the slaughterhouse was a reasonable inference given the sequence of events beginning with the murder of Charles Ragland, the placement of Hurd in the closet, tying of Angela Ragland on the bed, and then Morris's return to Hurd in the closet to stab her multiple times, killing her. *Id.* at 828-29. The claim is not debatable among reasonable jurists and does not deserve encouragement to proceed further.

Petitioner contends that appellate counsel should have raised as improper the statement that the jury should remember the victims' families. Specifically, the prosecutor stated, "There's a lot of other pain here and that's the families of these victims." (ECF No. 66-15 at PageID 2917.) The Supreme Court, in *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), held that "[v]ictim impact evidence is simply another form or method of informing the sentencing

authority about the specific harm caused by the crime in question" and serves "entirely legitimate

purposes."[4]

> We thus hold that if the State chooses to permit the admission of victim impact
> evidence and prosecutorial argument on that subject, the Eighth Amendment
> erects no *per se* bar. A State may legitimately conclude that evidence about the
> victim and about the impact of the murder on the victim's family is relevant to the
> jury's decision as to whether or not the death penalty should be imposed. There is
> no reason to treat such evidence differently than other relevant evidence is treated.

*Payne*, 501 U.S. at 827. However, the Supreme Court recognized that relief under the due

process clause would be appropriate if victim impact evidence introduced in the sentencing

phase of a criminal case "is so unduly prejudicial that it renders the trial fundamentally unfair."

*Id.* at 825. Based on *Payne*, the prosecution's argument recognizing the pain suffered by the

families of the victims is not improper or inflammatory. Therefore, the related ineffective

assistance of appellate counsel claim is not debatable among reasonable jurists and does not

deserve encouragement to proceed further.

Morris maintains that the statement about "render unto Caesar" is improper. Specifically,

the prosecution stated:

> The defendant utilizes scripture and I guess I'm reminded of this. If the
> aggravating circumstances are not outweighed by the mitigating, and they're not,
> you've got to do your obligation to impose the death penalty, and that's
> Tennessee's way of saying, "You render unto Caesar that which is Caesar's and
> you render unto God that which is God's."

(ECF No. 66-15 at PageID 2928.) This statement taken in context and considering that the

prosecution is still encouraging the jury to follow the law does not make Morris's trial

fundamentally unfair. *See Billings v. Polk*, 441 F.3d 238, 248-51 (4th Cir. 2006); *Bennett v.

Angelone*, 92 F.3d 1336, 1345-47 (4th Cir. 1996); *see also Coe v. Bell*, 161 F.3d 320, 351 (6th

---

[4]With *Payne*, the Supreme Court overruled its prior decision in *Booth v. Maryland*, 482
U.S. 496 (1987), which held that victim impact evidence leads to the arbitrary imposition of the
death penalty. *See Payne*, 501 U.S. at 829.

Cir. 1998) (no due process violation where prosecution argued that "there's certainly foundation for capital punishment in the Bible and in the scriptures themselves"). The issue of ineffective assistance of appellate counsel related to this statement is not debatable among reasonable jurists and does not deserve encouragement to proceed further.

Morris further contends that he is entitled to a COA for ineffective assistance of appellate counsel related to the prosecution's argument that

> [i]t's time for the defendant to be held responsible for his own conduct and submit himself to Caesar because he did that to himself. *You didn't do it to him.* Don't let him put you on a guilt trip. His heinous conduct, the brutal, heinous, atrocious murder is why we're here today.

(ECF No. 66-15 at PageID 2928 (emphasis added).) The prosecution also averred:

> You said that, "I will follow the law and the instructions of the Court and if the aggravating circumstances outweigh the mitigating circumstances, I will impose the death penalty." Is that a happy thing to do? No, but that's what you said you would do and that's what you should do based upon the law and the evidence.

(*Id.* at PageID 2928-29.)

The argument, taken in context, ties Morris's conduct to his guilt and acceptance of responsibility. However, it does not dictate the sentence or absolve the jury of its responsibility. *See Bowling v. Parker*, 344 F.3d 487, 516 (6th Cir. 2003) ("there is nothing in this statement that explicitly misinforms the jury of its role"); *see Greer v. Mitchell*, 264 F.3d 663, 684 (6th Cir. 2001) (distinguishing between cases like *Caldwell*, which try to minimize the jury's sense of responsibility for the death penalty, and where the prosecutor's comments represent a correct statement of law about aggravating and mitigating circumstances). This ineffective assistance of appellate counsel claim about the prosecution's argument that the jury "didn't do it to him" is not debatable among reasonable jurists or deserving of encouragement to proceed further.

Given that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal," *see Smith v. Robbins*, 528 U.S. 259, 288 (2000), and the lack of substance to Morris's claims based on the prosecution's closing argument, he is not entitled to a COA for the allegations in paragraphs 11(D) and 26(B) of the amended petition.

### 3. Removal of Jurors for Cause (Am. Pet. ¶¶ 11(F) & 18)

Petitioner asserts that a COA should issue based on his appellate counsel's failure to appeal the exclusion of Juror Spellings. (ECF No. 87 at PageID 6593.) He states that the exclusion of Spellings is debatable under *Adams v. Texas*, 448 U.S. 38 (1980). (*Id.*)

The Court distinguished the instant case from *Adams* and determined that the allegations in paragraph 18 were without merit. (ECF No. 58 at PageID 1093.) The Court denied a COA on that issue in its September 29, 2011, order. (*Id.*) As the underlying claim about Spellings's removal is without merit, an ineffective assistance of appellate counsel claim about the removal is not substantial under *Martinez*, not debatable among reasonable jurists, and does not deserve further consideration.

### 4. The Medical Examiner's Testimony (Am. Pet. ¶ 11(G))

Morris alleges that his appellate counsel was ineffective for failure to state a claim about the admission of the medical examiner's testimony at the sentencing phase. (ECF No. 12 at PageID 121.) He contends that his counsel failed to challenge the misleading and unscientific testimony of pathologist O. C. Smith, especially where the Tennessee Supreme Court has held a pathologist, in a capital case may not testify outside his area of expertise. (ECF No. 87 at PageID 6594.) The inmate contests the scientific basis for Smith's claims that the wounds were inflicted with the intent to torment the victim. (*Id.*) Morris argues that the testimony was highly

prejudicial and misleading and that the allegations in paragraph 11(G) are debatable and worthy of a COA. (*Id.*)

To support his allegations of ineffective assistance of appellate counsel in paragraph 11(G), Morris refers to his due process claim about O. C. Smith's testimony in paragraph 13 of the amended petition. (ECF No. 12 at PageID 121-23.) The Court found no due process violation where Smith testified that the wounds could not necessarily dictate the circumstance that preceded them and that he could not say, with any medical certainty, that the wounds were "control wounds." (ECF No. 58 at PageID 1073-75.) The Court did not find the evidence to be prejudicial. (*Id.* at PageID 1075.) Without prejudice associated with the admission of this testimony, Morris does not have a substantial ineffective assistance claim. The allegations in paragraph 11(G) of the amended petition are not debatable among reasonable jurists and do not deserve encouragement to proceed further.

### 5. Ineffective Assistance of Appellate Counsel & Voir Dire (Am. Pet. ¶¶ 11(H), 9(L), 9(M), & 19)

Petitioner avers that his appellate counsel failed to raise a substantial Sixth Amendment challenge that Jurors Atkins and Bowman were unfairly biased where the transcript shows that they expressed clear bias against Morris during *voir dire* and should have been excluded from jury service. (ECF No. 87 at PageID 6594; *see* ECF No. 12 at PageID 116-17, 127.) The inmate contends that seating Atkins, who felt that Morris should have to testify at trial, was a clear violation of the Fifth and Sixth Amendments under *Franklin v. Anderson*, 434 F.3d 412, 421 (6th Cir. 2006). (ECF No. 87 at PageID 6594.) He claims that his ineffective assistance of appellate counsel claim is meritorious under *Franklin* and "certainly debatable." (*Id.*) Morris argues that Bowman's admission that he had an opinion about the case and would not be able to put it aside is also meritorious and debatable. (*Id.* at PageID 6594-95.)

These claims were procedurally defaulted.  (ECF No. 58 at PageID 994, 1093-94.)  In response to the motion to alter or amend the judgment, the Court addressed the allegations in paragraphs 9(L) and 9(M) of the amended petition and found that the claims were not substantial under *Martinez*.  (ECF No. 85 at PageID 6569-77.)  Because these claims are not substantial, the issue of ineffective assistance of appellate counsel as applied to the failure to raise these claims, the allegations in paragraph 11(H) of the amended petition as it relates to paragraphs 9(L) and 9(M), is not debatable among reasonable jurists.  The related trial court error claim in paragraph 19 (*see* ECF No. 12 at PageID 127) is also not debatable among reasonable jurists and does not deserve further consideration.

### 6. Ineffective Assistance of Appellate Counsel – Jury Instructions & Argument (Am. Pet. ¶¶ 11(H), 21(A-D), & 26(A))

Morris contends that his appellate counsel ineffectively failed to raise substantial challenges to jury instructions on reasonable doubt, intent, and premeditation that violated *Sandstrom v. Montana*, 442 U.S. 510 (1979), where the instructions allowed the jury to convict despite reasonable doubt about whether he possessed the required *mens rea* (Am. Pet. ¶¶ 21(A-D)).  (ECF No. 87 at PageID 6595; *see* ECF No. 12 at PageID 127-29.)  Based on paragraph 26(A)(2) of the amended petition, Petitioner argues that his appellate counsel failed to challenge the prosecution's arguments that misled jurors to believe he could only be acquitted if he was not "capable" of possessing *mens rea* when he could have been acquitted if he simply did not possess the required *mens rea*.   (ECF No. 87 at PageID 6595; *see* ECF No. 12 at PageID 131-32.)  The inmate asserts that these claims are debatable where the underlying claims are debatable and appellate counsel failed to raise them on direct appeal.  (ECF No. 87 at PageID 6595.)

With regard to the allegations in paragraph 21(A) of the amended petition, this Court has determined that the attacks on the reasonable doubt jury instruction were without merit based on Sixth Circuit precedent. (*See* ECF No. 58 at PageID 1039-47.) The Court determined that the instructions referenced in paragraphs 21(B) and 21(C) were correct statements of the law and that *Martinez* did not apply. (ECF No. 85 at PageID 6566-69.) With regard to the allegations in paragraph 21(D) related to the intoxication instruction, the Court found no substantial and injurious effect from the instruction and no entitlement to habeas relief. (*See* ECF No. 58 at PageID 1058-59.) To the extent that there is not a meritorious claim related to the jury instructions and no prejudice to Morris, *Davila* does not create an issue that is debatable among reasonable jurists or deserving of encouragement to proceed further for the allegations raised in paragraphs 21(A-D).[5]

In paragraph 26(A)(2) of the amended petition, Morris alleges that the prosecution misstated the law and misled the jury about its constitutionally-required burden of proof when it argued that he "could be only acquitted **only** if he was precluded from forming the requisite *mens rea* and/or 'cannot develop' the *mens rea*, or 'can't form' premeditation and/or was not 'capable of' or 'could not have possessed' the requisite *mens rea*." (ECF No. 12 at PageID 131-32 (internal citations omitted).) Petitioner submits that, from a constitutional perspective, the proper question is not the capacity to form intent, but whether the jury believed, beyond a reasonable doubt, that he actually had the necessary *mens rea*. (*Id.* at PageID 132.)

Specifically, the prosecution argued about Morris's defense of voluntary intoxication and how it could affect a guilt determination "if he *could not form* the requisite intent to commit the

_____

[5]Morris argues, without explanation, that this claim is debatable under *Buck*. (ECF No. 87 at PageID 6595.) As there is no clear correlation between *Buck* and the jury instructions at issue, the Court finds that these claims are not debatable among jurists of reason based on that decision.

offense of murder in the first degree[.]"  (ECF No. 66-14 at PageID 2697-98 (emphasis added).)

The prosecution argued that the simplified version of the law is

> [t]hat voluntary intoxication, before it can be a defense to either homicide, murder in the first degree or aggravated rape, is that the defendant is just so drunk that he *cannot develop* the requisite intent to commit the crime.  He's just so drunk that he *cannot develop* the requisite intent to commit a crime.

(*Id.* at PageID 2699 (emphasis added).)  The prosecution further stated "let's look at [the case] and let's decide if the proof in this case shows that the defendant was so voluntarily intoxicated that he *could not form* the reckless intent to commit murder in the first degree, premeditated, deliberate murder, or commit an aggravated rape."  (*Id.* at PageID 2700 (emphasis added).)  The prosecution continued about the capability of forming intent and reviewed the statements in evidence to show multiple examples of premeditation and intent and described Morris's actions as having "[p]lanning, purpose, cool deliberation, intent."  (*Id.* at PageID 2703-05.)

The prosecution stated that intoxication was relevant to an essential element of the defendant's culpable mental state and acknowledged that "[t]he State must prove beyond a reasonable doubt the required culpable mental state of the defendant which is . . . [t]hat the defendant acted intentionally."  (*Id.* at PageID 2723-24.)  The only reason that the capacity to form intent came into consideration was the voluntary intoxication defense.  The prosecution focused on the evidence to show actual intent.

The prosecution further stated "[n]ow, don't look to me to the law and don't look to the defense team.  The Judge will instruct you at the appropriate time as to what the law is."  (*Id.* at PageID 2698.)  Finally, the prosecution directly addressed its burden of proving intent.  (*Id.* at PageID 2724.)  The prosecution's argument was not misleading and the allegations in paragraph 26(A) of the amended petition lack merit.  The resolution of the claim of ineffective assistance of

appellate counsel as it relates to paragraph 26(A) is not debatable among reasonable jurists as it relates to *Davila*.

The allegations of ineffective assistance of appellate counsel as they relate to paragraphs 21(A-D) and 26(A) are not debatable among reasonable jurists, not deserving to proceed further, and not entitled to a COA.

**B.**  *Wilson*

Morris contends that the Court should grant a COA for the allegations in paragraphs 10(A-D) of the amended petition because of the grant of certiorari in *Wilson v. Sellers*, 137 S. Ct. 1203 (2017).  (ECF No. 87 at PageID 6596.)  He alleged ineffective assistance of counsel at sentencing based on counsel's failure to (1) prepare an effective mitigation strategy (Am. Pet. ¶ 10(A)); (2) offer expert psychiatric and pharmacological testimony (*id.* at ¶ 10(B)); (3) present Morris's mental condition in a biographical context and address the fact that he had suffered for more than twenty years without diagnosis or treatment (*id.* at ¶ 10(C)); and (4) provide evidence that his cocaine use was "in part, unconscious self-medication" (*id.* at ¶ 10(D)).  (ECF No. 12 at 20-22.)

This Court previously granted relief on the allegations in paragraphs 10(A-D) and was reversed by the Sixth Circuit.  (ECF No. 58 at PageID 1124.)  *See Morris*, 802 F.3d at 842-45. The petition for writ of certiorari to the United States Supreme Court was denied, and the petition for rehearing was denied.  *See Morris v. Westbrooks*, 137 S. Ct. 44 (2016) & *Morris v. Westbrooks*, 137 S. Ct. 540 (2016).  There were no dissenting opinions at either the Sixth Circuit or the United States Supreme Court.

The inmate argues that the Sixth Circuit denied relief positing that counsel could have proceeded as they did at sentencing to avoid potential rebuttal evidence, but counsel did not state

that the failure to present mitigating evidence was to avoid rebuttal. (ECF No. 87 at PageID 6596.) *See Morris*, 802 F.3d at 844 ("By not presenting additional mental-health testimony in the mitigation phase, counsel avoided opening the door to rebuttal evidence of Morris's history of drug dealing, drug use, and other illegal acts."). Morris argues that the Sixth Circuit "felt that it had the liberty to create a reason for counsel's actions not contained in the record, and thus uphold counsel's actions under 28 U.S.C. § 2254(d)."[6] He contends that the Sixth Circuit upheld the state court decision as reasonable based on a reason never expressed by the state court.

Petitioner asserts that the Sixth Circuit's reasoning is "highly questionable" in light of *Wilson*. (ECF No. 87 at PageID 6597.) According to the inmate, in *Wilson*, the Supreme Court will be deciding "whether, when a state court has issued a written opinion, *Harrington* [*v. Richter*, 562 U.S. 86 (2011),] allows a federal court to uphold a state court decision by positing reasons for the state judgment even if never expressed by the last state court to issue a written opinion." (*Id.*) Morris insists that *Wilson* calls into question the Sixth Circuit's prior decision in this case making the denial of relief debatable. (*Id.*)

Based on the law of the case, it appears that Morris is foreclosed from relief and should not be encouraged to proceed further with this claim. Further, the question pending before the United States Supreme Court in *Wilson* is:

> Did this Court's decision in *Harrington v. Richter*, 562 U.S. 86 (2011), silently abrogate the presumption set forth in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) -- that a federal court sitting in habeas proceedings should "look through" a summary state court ruling to review the last reasoned decision -- as a slim majority of the *en banc* Eleventh Circuit held in this case, despite the agreement of both parties that the *Ylst* presumption should continue to apply?

---

[6]The Sixth Circuit further stated, "[t]his court may entertain possible reasons for counsel's decisions even if not expressed by counsel. Accordingly, the risk of rebuttal evidence is a valid consideration whether or not Morris's counsel considered it." *Morris*, 802 F.3d at 845 (internal citation omitted).

*See* https://www.supremecourt.gov/qp/16-06855qp.pdf (last accessed May 17, 2017).   In the instant case, there was not a summary state court ruling on Morris's claims of ineffective assistance of counsel at sentencing.  *See Morris v. State*, No. W2005-00426-CCA-R3-PD, 2006 WL 2872870, at *59-64 (Tenn. Crim. App. Oct. 10, 2006).  Petitioner's case does not present the issue raised in *Wilson*, and his argument that *Wilson* makes the law of the case inapplicable is without merit.  (*See* ECF No. 87 at PageID 6597.)   The allegations in paragraphs 10(A-D) are not debatable among reasonable jurists and should not be encouraged to proceed further by granting a COA.

### C.     *Buck*

Petitioner argues that the Court should a grant a COA, based on *Buck*, on his claims that his trial and appeal were tainted by racism and his counsel were ineffective for failing to object to the racism.  (*Id.* at PageID 6598.)   He seeks relief through a COA for the allegations in paragraphs 9(N), 9(P), 24, 27, 11(H), and 29(L) of the amended petition.  (*Id.*)  Morris contends that the debatability of these claims is "apparent" in light of the Supreme Court's decision in *Buck*.  (*Id.* at PageID 6590, 6598.)  These allegations involve ineffective assistance of counsel surrounding a peremptory challenge against Savanna Ingram, the sole black jury pool member who was not removed for cause (Am. Pet. ¶¶ 9(N) & 24), the all-white jury (*id.* at ¶ 24), ineffective assistance of trial counsel claim through the exclusion of blacks from the position of grand jury foreperson (*id.* at ¶ 27), the Tennessee Supreme Court's explicit use of race in conducting proportionality review (*id.* at ¶ 29(L)), and the related ineffective assistance of

appellate counsel based on the state supreme court's proportionality review (*id.* at ¶ 11(H)). (ECF No. 87 at PageID 6590; *see* ECF No. 12 at PageID 117, 121, 130-31, 133, 136.)[7]

Morris states that the Supreme Court in *Buck* held that: (1) Buck's trial counsel were ineffective for presenting evidence that blacks as a race were more likely to engage in future acts of violence; (b) Buck was prejudiced by counsel's failures; (c) Buck was entitled to Fed. R. Civ. P. 60(b)(6) relief because of the extraordinary circumstance that his capital sentence was tainted by racism; and (d) Buck was entitled to the application of *Martinez* to his claim because it had some merit. (ECF No. 87 at PageID 6598.) Petitioner cites Chief Justice Roberts's condemnation of the racism which infected Buck's trial stating that "[s]ome toxins can be deadly in small doses." (*Id.*); *Buck*, 137 S. Ct. at 777. Morris further noted Justice Roberts's repeated emphasis on the Texas Attorney General's statement that "it is inappropriate to allow race to be considered as a factor in our criminal justice system" and that Buck may have been sentenced to death because of his race. (*Id.*); *Buck*, 137 S. Ct at 770, 778-79.

The inmate argues that *Buck* establishes that racism in a capital case is an extraordinary circumstance requiring a reviewing court to decide a petitioner's claim that trial counsel was ineffective for allowing racism to taint the case. (ECF No. 87 at PageID 6599.) He submits this is "precisely what occurred" here, as Morris alleges that his trial counsel were ineffective for failing to object to the striking of Ingram and to the racial discrimination against blacks in the selection of the grand jury foreperson. (*Id.*)

Petitioner avers that *Buck* makes it clear that a state system may not "provide support for making a decision on life or death on the basis of race" and that it is "inappropriate to allow race

_____

[7]The ineffective assistance claims are presented in paragraph 9(N) incorporating paragraph 24, 9(P) incorporating paragraph 27, and paragraph 11(H) incorporating paragraph 29(L). (*See* ECF No. 87 at PageID 6590, 6598.)

to be considered as a factor in our criminal justice system." (*Id.*); *see Buck*, 137 S. Ct. at 770, 776, 778-79. He contends that these statements in *Buck* confirm that he was also denied his constitutional rights to a fair proportionality review on direct appeal and that his counsel were ineffective for failing to argue this point on appeal, as alleged in paragraphs 11(H) and 29(L). (*Id.* at PageID 6599-600.)

The Supreme Court in *Buck* concluded that:

- Defense counsel's performance during the penalty phase of a capital murder trial, in presenting expert testimony that the defendant was statistically more likely to act violently in the future (establishing his future dangerousness) because of the immutable characteristic that he was black, fell outside the scope of competent representation;

- That the Fifth Circuit's analysis went beyond the threshold inquiry of determining whether the issue was debatable among jurists of reason when it denied the COA; and

- That Buck's case presented an "extraordinary circumstance" under Fed. R. Civ. P. 60(b)(6) because "Buck may have been sentenced to death in part because of his race."

*Buck*, 137 S. Ct. at 774-78. The majority made strong statements about racial discrimination in the administration of justice and about race being presented to the jury as a factor in the determination of the death penalty. *Id.* at 778-79. Specifically, the Court stated,

when a jury hears expert testimony that expressly makes a defendant's race directly pertinent on the question of life or death, the impact of that evidence cannot be measured simply by how much air time it received at trial or how many pages it occupies in the record. Some toxins can be deadly in small doses.

*Id.* at 777.

Although the issues raised by Morris here involve race, they are not the claims presented before the United States Supreme Court in *Buck*. Unlike in *Buck*, Petitioner's jury was not presented expert evidence, or any evidence, that would tie his race to an aggravating factor in the penalty phase. Further, there is no indication in the record that he was sentenced to death based on his race. *Buck* was an extraordinary circumstance, which is not present in the instant case.

*See Buck*, 137 S. Ct. at 781 (Thomas, J., dissenting) ("Today's decision has few ramifications, if any, beyond the highly unusual facts presented here.")

The mere insertion of race as a collateral issue, as with the issues presented here, does not make a claim debatable among reasonable jurists based on *Buck*. The allegations in paragraphs 9(N), 9(P), 24, 27 11(H) & 29(L) of the amended petition are not entitled to a COA.

### D.      *Martinez*

Morris argues that he is entitled to a COA for "[a]ll procedurally defaulted ineffective-assistance-of-trial-counsel claims, for which he has never received any application of *Martinez . . .,*" including the allegations in paragraphs 9(N) and 9(P) of the amended petition incorporating paragraph 27, 9(K) incorporating 21(B-D), 9(L), and 9(M). (ECF No. 87 at PageID 6590.) He insists that the denial of any application of *Martinez* to his procedurally defaulted ineffective assistance of trial counsel claims violates his right to have the governing law fairly and properly applied during his initial federal habeas corpus proceedings. (*Id.* at PageID 6600.) The inmate claims that it is debatable whether he is entitled to application of *Martinez* to the procedurally defaulted ineffective assistance of trial counsel claims. (*Id.*) As *Martinez* was decided while his case was on appeal, Morris submits it "cannot be right" that *Martinez* is not applied. (*Id.* at PageID 6601.)

The law of the case, while this case was on appeal, rejected Morris's claim of entitlement to *Martinez* review of his ineffective assistance of trial counsel claims. Further, *Martinez* provides an equitable remedy, which has not, in most cases, been determined to be an extraordinary circumstance entitling a petitioner to post-judgment relief. Review of these claims should not be encouraged to proceed based not only on the procedural default, but on the lack of

substance of the claims.[8]  Without a substantial claim, Morris would not be entitled to *Martinez* relief.  He is not entitled to a COA on the application of *Martinez* to the allegations in paragraphs 9(N) and 9(P) incorporating 27, 9(K) incorporating 21(B-D), 9(L), and 9(M).

## IV.    CONCLUSION

In this case, there can be no question that the claims in the petition are without merit. Because any appeal by Morris on the issues raised in this petition does not deserve attention, the Court DENIES a COA.  His application for a COA is DENIED.

## V.    *IN FORMA PAUPERIS* STATUS ON APPEAL

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).  In this case, for the same reasons it denies a COA, the Court determines that any appeal would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[9]

---

[8]Morris failed to further pursue allegations in paragraph 27 of the amended petition, despite his representation to this Court that he was filing a motion to reopen the state post-conviction proceedings.  (*See* ECF No. 58 at PageID 1104-05.)

[9]If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days of the date of entry of this order.  *See* Fed. R. App. P. 24(a)(5).

IT IS SO ORDERED this 18th day of May 2017.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE